FRANCIS MORAN v. GEORGE GREEN.

1. In an agreement between M. & G. to cultivate multicaulis trees in partnership, G. agreed to furnish M. with 600 roots, at $2.50 each ; M. agreed to pay G. for one half of same at that rate, as soon as he could obtain funds by using all due diligence, and if not paid within one month, with interest from date ; *held* that the sale of the trees was a mere *assumpsit*, not connected with the partnership, and the subject of an action at law ; and that it was a sale at a credit of one month ; and that the power of raising money was not a condition precedent ; and that suit could be brought at the expiration of the month.

2. The facts upon which the objection to evidence is founded, must appear on the bill of exceptions affirmatively. It is not sufficient that the bill of exceptions is silent, even where proof of the facts is necessary to legalize the evidence objected to.

3. The statutory provisions for the taking the testimony of foreign witnesses by commission, are in derogation of the common law, and therefore the directions as to the acts to be done by the party must be strictly complied with. But as these statutes are remedial, and for the advancement of justice, they must be liberally construed.

4. In offering the depositions of witnesses, taken under a foreign commission, it is not necessary to prove that the commission was regularly issued.

5. The statute as to acts to be done by the judge or clerk, is to be considered *directory*, and any omission on their part to comply with its directions, if the *integrity* of the commission is preserved, will not deprive the

party of the benefit of it; as if the judge neglects to file the commission, or the clerk permits it to be taken from his files.

6. The original depositions and commission may be taken from the files of the Supreme Court, and offered in evidence at the circuit.

7. A general exception to evidence made at the trial, without specifying the grounds of the objection, cannot be a ground of reversal in writ of error.

On Error to the Supreme Court.

This was an action of assumpsit. The declaration contained three counts : the 1st, for goods sold and delivered ; the 2d, for money lent, paid for, and had received by, the defendant; and the 3d, upon an account stated. Moran, the defendant below, pleaded non-assumpsit and payment : and upon issue joined, the cause was tried before Mr. Justice WHITE, at the Warren Circuit, in June Term, 1842 when the jury rendered a verdict for Green, the plaintiff below.

On the trial of the cause, the judge admitted in evidence, on the part of the plaintiff below, a certain agreement in writing, signed by the parties :, and also the deposition of a witness who had been examined upon interrogatories, under a commission for that purpose, issued out of the Supreme Court. To these decisions of the judge, the defendant below excepted, and prayed bills of exception : and they were sealed accordingly. Judgment having been afterwards given for the plaintiff below, on the said verdict, in the Supreme Court, this writ of error was brought by Moran, the plaintiff below.

*H. W. Green,* for plaintiff in error.

*P. D. Vroom,* for defendant.

HORNBLOWER, C. J. The first error assigned by the plaintiff in error, is, that the judge admitted to be produced and read in evidence, on the trial below, a certain agreement in writing, between the parties, dated the 30th March, 1839. That agreement is as follows :

" It has been agreed between " (the parties,) " that they will

cultivate multicaulis trees, during the ensuing summer, at New-ton, in partnership, in the following manner, viz: the said Green agreed to furnish 600 roots, &c., of the first quality, of the lot purchased of McLean, at the rate of $2.50 each : and the said Moran, agrees to pay the said Green, for one-half of the same, at the rate aforesaid, as soon as he can command funds for so doing, by using all due diligence in obtaining the same : and if the money aforesaid should not be paid within *one month* from this day, then it shall bear interest from the date hereof." The agreement then proceeds to stipulate what *Moran* shall do with the trees ; how they shall be cultivated and sold, and the proceeds divided between the parties.

This was clearly a contract for two purposes ; First: for a sale by Green to Moran, and for a purchase by the latter from the former, of one-half of a certain number of trees, of a certain description, at a stipulated price: and 2dly, a contract about the manner in which the whole number of trees should be culti-vated and disposed of—for the joint benefit of the parties.

It does not appear by the bill of exceptions, that any evi-dence was given in respect to the subsequent disposition of the trees ; or that any attempt was made by the plaintiff below, to recover in this action, his share of the proceeds of the joint speculation. The case is therefore clear of any objection, upon the ground of its being a partnership account or transaction. It was simply an action of assumpsit, for the stipulated price of a certain number of trees sold and delivered by the plaintiff to the defendant ; and the only question is, whether the money was due and payable, when this action was brought. That it was so, I have no doubt. It was a contract for the sale of mulberry trees, at a credit of one month. If not then paid, (like all other cases of a sale on credit for a stipulated period,) the purchase money was from that time to bear interest until paid, without requiring the vendor to demand payment, by suit, or otherwise. The defendant was bound to pay it sooner if he could raise the money. He had a right to do so, but he could not be sued be-fore the expiration of the month. If not then paid, he was to pay interest until the debt was liquidated.

If this is not the plain meaning of the contract, then it was a

promise to pay upon a condition subsequent: upon which the plaintiff could never recover, without proving that the defendant had funds sufficient to pay the debt, at the time of commencing the suit. Such a construction ought not to be given to the contract, unless we feel ourselves constrained to do so, by its plain and unequivocal terms.

The 2d error assigned for the reversal of this judgment is, that the judge, on the trial of the cause, admitted in evidence the deposition of the Rev. Isaac N. Candie, taken under a commission issued for that purpose. The plaintiff in error, in his assignment of this error, specifies, as reasons why this deposition ought not to have been admitted, that the commission had not been lawfully issued, executed or returned; and that the commission and return had not been opened and filed in the office of the clerk of the Supreme Court, before the same was offered in evidence.

In forming my opinion upon this point, I shall confine myself to the case as it appears before this court, upon the record. We can know nothing judicially of the history of this commission, but what we learn from inspecting the bill of exceptions, and the commission and return itself. The bill of exceptions does not inform us how the commission and deposition reached the circuit, and came into the hands of the plaintiff below. If the defendant had any objection to make, founded on the past history of the commission, or arising out of the manner of its transmission to the circuit, he ought to have stated, and if necessary, proved the facts on which such objection was founded. If in such case the judge had overruled the objection, those facts ought to have been inserted in the bill of exceptions, so that this court might fairly review the judgment of the court below in respect of that particular matter. Instead of this, the bill of exceptions only informs us, that the plaintiff offered in evidence the deposition of Mr. Candie, taken under a commission out of the Supreme Court; that the defendant objected to its being read, and that the court overruled the objection; but why, or upon what ground, the defendant objected, does not appear; nor does it appear that he assigned any reason at all, why the evidence should not be received.

The Supreme Court has repeatedly expressed its disapprobation of this general way of stating an exception to evidence; and a recent case in the Supreme Court of the U. S. (*Camden* v. *Doremus & al.* 3 *Howard's U. R.* 515,) is so direct upon this point, that I cannot refrain from citing it. In that case, the court say as follows : " After each deposition offered in evidence to the jury, it is stated in the bill of exceptions, that to the reading of such deposition, the defendant objected, and that his objection was overruled—with regard to the manner and import of this objection, *they were of a kind that should not have been tolerated* in the court below. Upon the offer of testimony, oral or written, extended and complicated as it may often prove, it could not be expected, upon the mere suggestion of an exception, which did not *obviously* cover the competency of the evidence, nor point to some definite or specific defect in its character, that the court should explore the entire mass, for the ascertainment of defects, which the objector himself either would not or could not point to their view. It would be more extraordinary still, if under the mask of such an objection, or mere hint at an objection, a party should be *permitted, in an appellate court*, to spring upon his adversary defects which it did not appear he ever relied on ; and which, if they had been openly and specifically alleged, might have been easily cured. It is impossible that the court can determine or do more than conjecture, as the objection is stated on the record, whether it applied to form or substance ; or how far, in the view of it presented to the court below, if any particular view was so presented, the court may have been warranted in overruling it. *We must consider objections of this character, as vague and nugatory ;* and, if entitled to weight any where, *certainly without weight in an appellate court.*"

In his assignment of errors, however, the plaintiff in error has given us some reasons why the deposition ought not to have been read in evidence. In the first place he says, the commission had not been lawfully *issued, executed* or *returned ;* and 2dly, that the commission and return had not been deposited and filed in the clerk's office at Trenton, before it was offered in evidence. Let us, therefore, examine these objections. Ad-

mitting, for the present, that upon a general objection to the reading of a deposition taken under a commission, the Judge is bound to inspect the document, and to take notice of any legal defects apparent upon the face of it; yet, certainly he is not bound to look for objections out of the instrument itself. Nor is it necessary for a party offering such a deposition in evidence to prove at the trial, that the commission had been lawfully issued, by showing that he had given the proper notices, entered the necessary rules, and taken all the requisite incipient steps to procure a commission to be duly issued. So far, therefore, as the plaintiff in error rests himself upon the allegation that the commission was not lawfully issued, he must utterly fail in this court.

But the plaintiff in error further objects, that the commission was not lawfully *executed and returned.* Whether it was so or not, the court could only determine by inspecting the document itself; unless the party objecting had proved some fact, showing an irregularity, and vitiating the execution and return of the writ.

But no evidence of any such irregularity was offered at the trial. On this part of the case, however, it was objected on the argument; (although no such matter is assigned for error,) that it does not appear by the instrument itself, that the commissioner closed up the commission under his hand and seal. The language of the statute is, (see *Elm. Dig.* 606, *No.* 16, § 1,) that "the commissioner shall sign the same," (that is, the deposition, of the witness,) "and annex such examination and exhibits— and close the same up under the hand and seal of the commissioner, and direct the same, &c." The act then proceeds to say, that the commissioner "shall and may place the same in any post office, *certifying thereon* the time when, and the post office in which" he placed the same. The specific objection urged upon the argument, was, not that the commissioner in point of fact, had not closed up the document under his hand and seal; but that he had not certified on the document itself that he had done so. It is a sufficient answer, I think, to say, that the statute does not require such a certificate. It simply says, the commissioner shall close it up, under his hand and

seal. This the commissioner certainly must do ; and the only question is, whether it sufficiently appears to the court upon an inspection of the document, that the commissioner did close it up, under his hand and seal. To my mind, the evidence that he did so, is abundant. It appears by the certificate of Mr. Justice NEVIUS, endorsed on the commission, that it came to his hands sealed up ; and now upon inspection of the papers, we see the commissioner's name written just over or above the seal ; and below it, his certificate of the time when, and the post office in which he put the instrument ; the writing of which certificate, and his signature thereto, crossing the very folds and edges of the paper, manifestly showing that it had been written after the paper had been folded up and confined by the seals. In my opinion there is nothing in this objection.

The next reason assigned, in support of the exception taken at the trial is, that the commission and return had not been opened and filed in the office of the clerk of the Supreme Court, before it was offered in evidence.

All we can ascertain from the record in this case is, that the plaintiff had in his possession, at the circuit, the original commission and return. That commission and return is now here, as a part of the record, brought into this court by the writ of error. Upon inspection it appears, by the certificate of Mr. Justice NEVIUS endorsed upon it, that he took it out of the post office at Trenton, and that he opened it and endorsed thereon, how and in what manner he recorded the same. But whether it was ever filed in the clerk's office ; or how it came into the hands and possession of the plaintiff below ; or by what means or authority it was transmitted to the Circuit Court of Warren County, does not appear, either by the bill of exceptions, or by any other means, of which we can judicially take notice. The simple question then is, whether the judge did right, in admitting the deposition to be read, on the trial.

It is said, in argument, that the judge erred ; 1st, because the deposition was not evidence, and could not be read as such, until after it had been filed in the clerk's office. 2dly, that when filed, the commission and return were there to remain on *record;* and that copies only could be used. And 3dly, that

even if the original could be carried to the circuit, and be there used, it ought to appear by the document itself, that it had been *returned to*, and deposited by the judge who took the same out of the post office, or who received it from the party, his attorney or agent, with the clerk of the court, out of which the commission had issued.

In support of these objections, the common law rule is relied on, that in every proceeding, under a special delegated authority, or in the exercise of a limited and statutory jurisdiction, the proceeding must show upon its face, that the statute has been strictly complied with. I am a great stickler for this rule. It is a sound and salutary one, when properly applied : but I think it has no application to the question now before us. The act concerning witnesses, under which this commission was issued, is a general one, authorizing the courts of civil and common law jurisdiction, to procure and use the depositions of foreign witnesses, in all causes pending in such courts. It is a remedial statute, and for the general advancement of justice. We have no means of compelling the attendance of witnesses from other states, though divided from some of them only by a geographi cal line, or a narrow river ; and yet without the benefit of their testimony, we might as well, in relation to a very large portion of our law suits, shut up our courts of justice, as to attempt to reach the truth and justice of the case, without the benefit of such testimony. While, therefore, we guard against any abuse of the privilege given to suitors by this statute, we ought not to give it such a construction as to render it nugatory, and defeat the beneficial purposes for which it was designed.

So far indeed, as relates to what is to be done by a party invoking the benefit of the statute, or by his attorney or agents, he ought to be held to a strict, or at least, a substantial compliance with the requirements of the statute. The provisions of the statute have two objects in view. In the first place, to secure an honest and fair execution of the commission ; and 2dly, to prevent any alteration or mutilation of the depositions, in their transmission from the hands of the commissioner, to the court out of which the commission issued. For the due observance of every thing relating to these matters, the party suing

out the commission is alone responsible; but when he has got it back into the hands of a judge of the court, out of which it issued, he has done all the law requires him to do; he has no further control over it, and ought not by any omission of duty on the part of the judge or the court, or its clerk, to be deprived of the benefit of the evidence. It seems to me, that after a party has had the commission lawfully executed, at great expense; it may be in Paris, London, or St. Petersburgh; and has got it back to this country, in the very manner and place prescribed by law; it would be a mockery of justice to deny him the use of it, because the judge or court or clerk, had omitted some duty required of them by the statute, in relation to the commission. The failure of a judge to make a proper certificate on the document, when he receives it; or to deposit it in due time in the clerk's office, or the omission of the clerk to mark it filed, (if that is necessary,) ought not to prejudice the party, so long as the court are satisfied that the integrity of the instrument has not been violated.

In view of these principles, let us examine the objections now under consideration. It is insisted, 1st, that the deposition was inadmissible, because it had not been *filed* (a) in the clerk's office. My first answer is, that the statute does not require it to be *filed*, or to be marked as a file of the office. But secondly, if it did, such requirement would only be directory; and the omission of the clerk to file it, or to mark it filed, would not, upon the principles I have stated, deprive a party of his right to use the evidence. The court would consider that done by its officer, which he ought to have done; and if necessary, direct it to be filed, *nunc pro tunc*.

It is objected in the 2d place, that the commission itself ought not to have been carried to the circuit, but that an office copy ought to have been taken and given in evidence. This objection is based on the concluding clause of the 1st section of the act, in *Elm. Dig.* 606, which directs the judge to deposit the commission with the clerk of the court, and adds, " there to re-

(a) This in depositions taken in the state, is now regulated by statute. *Rev. Stat. p.* 962, § 11.

main as a record." The only question then is, whether the original commission and return can ever be taken from the clerk's office in Trenton, and used on the trial of a cause at the circuit. If we are to give a literal meaning to the words, "there to remain," the document can never be lawfully removed. But I apprehend this was not the intention of the legislature. It was necessary to give the judge, to whose hands the commission might come, some direction as to the disposition he should make of it, and the statute very properly says he shall deposit it in the clerk's office; and then for the purpose of its preservation, adds, "there to remain as a record." It is not pretended that this makes the document *a record of the court,* in the technical and common law tender of that term. It can mean nothing more, than that it shall remain as a file of the court, and under its control. To give the words a more technical and stringent meaning, would often be very inconvenient; especially in cases where original deeds or securities had become incorporated with the commission and return, by being annexed thereto as exhibits in the cause. It is clear that copies of such documents and vouchers would often be of no use at the circuit—certainly they would not, if the genuineness of the originals should be questioned there. In such cases, then, the commission and return must go to the circuit, or that document itself must be violated, by disengaging the deed or note from it, and thus at once destroying the evidence of the identity of the instrument, proved or testified to by the witness named in the commission. Hence the court has been in the practice of granting rules for leave to take the commission and return off of the files, and carrying them to the circuit to be used on the trial. And such, in the absence of any proof to the contrary, we must presume was the course pursued in this case.

What I have said on this point, has, in a measure, anticipated my answer to the third objection. I do not think it was necessary that the commission, when produced at the circuit, should have shewn by any writing or endorsement upon it, that the judge who had taken it out of the post office, had actually deposited it in the clerk's office, or that it had ever been actually filed by the clerk. The fair and legal presumption is, that the judge did his duty, after the commission came to his hands.

I can easily imagine that a party might be surprised by the production at the circuit of a commission, which he supposed had not been executed and returned. And so he might be, if copies only were introduced. But if the defendant below was really surprised by the introduction of this commission, he should have applied to put off the cause, or to have arrested its further progress, that he might have an opportunity of better preparing himself for his defence. This he did not do, but simply objected to receiving the commission and deposition in evidence; and his objection, in my opinion, was properly overruled. I am, therefore, in favor of affirming the judgment.

Judges WHITEHEAD, NEVIUS, RANDOLPH, PORTER, ROBERTSON, SCHENCK and SPENCER, concurred with the CHIEF JUSTICE in affirming the judgment—8.

*For Reversal*—Judges CARPENTER, SPEER, and the CHANCELLOR—3.

*Note.*—Since writing this opinion, a practitioner in the Supreme Court, informed me, that in *Tupper* v. *Weston,* (in 1843) he applied to that court for a rule for leave to take the commission and return off of the files, and send it by the Judge to the circuit; but the court, upon consulting Mr. Wall, who had been many years clerk of that court, held it to be unnecessary. Mr. Wall said, the practice while he was clerk, always had been, to serve a subpœna *duces tecum* on the clerk, who if he could not attend in person, would send his under clerk with the commission, or deputize the attorney in the cause to take charge of it.

CITED *Den* v. *Lloyd,* 2 *Vr.* 398; *D., L. & W. R. R. Co.* v. *Daily,* 8 *Vr.* 528; *Col. Del. Bridge Co.* v. *Geisse,* 9 *Vr.* 44.